[Civ. No. 56232. Second Dist., Div. Two. Oct. 7, 1980.]

■INTERNATIONAL KNIGHTS OF WINE, INC.,
Plaintiff and Appellant, v.
BALL CORPORATION et al.,
Defendants and Respondents.

**COUNSEL**

Gibson, Dunn & Crutcher, Richard Chernick and Thomas E. Holliday for Plaintiff and Appellant.

La Follette, Johnson, Schroeter & De Haas, Alfred W. Gerisch, Jr., Carey B. Moorehead, Veatch, Carlson, Quimby, Nelson & Kohrs, James R. Nelson and Herbert F. Blanck for Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—Appellant International Knights of Wine, Inc. (IKW) purchased bottled wine from Nave Pierson Winery, Inc. (Nave) to be marketed under IKW's label and trade name. Subsequently it discovered the wine was damaged and unmarketable, apparently as the result of corrosion of the metal caps which sealed the bottles. It sued Nave for the resulting damage in May of 1975, inter alia, on counts of negli-

gence, breach of implied warranty and strict liability in tort. It likewise asserted such claims against Nave's "suppliers," described by the trial court in the following context: "Nave Pierson Winery produced wine. It purchased metal caps for wine bottles from Latchford [Package Company], which purchased from Ball [Corporation], the manufacturer of the caps. Ball had sent the metal used in the caps to Western [Metal Decorating Co.] for coating before it was made into caps. Biner-Ellison [Manufacturing Co.] sold the capping equipment which was manufactured by Resina [Manufacturing Co.] to Nave. Nave used the caps on bottles of wine sold to International and others. It is alleged that due to defective caps or defective application of caps the wine became unsalable and economic loss was incurred."

On January 30, 1978, the motion of all defendants for judgment on the pleadings respecting the theory of strict liability was granted on the ground that cause was inappropriate to the suit.

At the close of IKW's case, the trial court also granted motions for nonsuit by the suppliers on the implied warranty claim, owing to lack of privity.

When all parties had rested, IKW's motion for directed verdict against Nave for breach of implied warranty of merchantability was granted and the former was awarded $54,531 in damages by the jury. Nave was also found to have been negligent, with IKW being awarded $24,893 as a result.

Ball and Western, the only defendants remaining herein as respondents, were found not at fault.

It is maintained by IKW the trial court erred in granting the motion for judgment on the pleadings which removed from the case the theory of strict liability in tort.

It is also contended IKW should be able to present evidence of economic loss in connection with the strict liability cause.

■ In its most familiar formulation, the strict liability doctrine contemplates that: "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for "defects, proves to have a defect that causes injury to a human being." because "...rules defining and governing warranties that were

developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed. . . . [¶] The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. Sales warranties serve this purpose fitfully at best." (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62-63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].)

From its initial application to instances involving personal injury, the doctrine has been extended to govern physical injury to a plaintiff's property as well, including within the latter term the article purchased itself. (*Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9 [45 Cal.Rptr. 17, 403 P.2d 145].)

What has been less well delineated and understood is the extent to which the theory should find acceptance when it is sought to be invoked by a party not in ordinary parlance denominated a consumer. Thus the notion as traditionally expressed, characterized as a form of judicial paternalism exercised in favor of those ultimate users unable to protect themselves against the effects of defective products, finds almost universal acceptance, but has been thought inappropriate in some instances where a transaction involves commercial enterprises which are part of the manufacturing chain.

So, by way of example, in *Kaiser Steel Corp.* v. *Westinghouse Elec. Corp.* (1976) 55 Cal.App.3d 737 [127 Cal.Rptr. 838], a case relied upon heavily by both sides here, Kaiser had purchased from Westinghouse a certain defective electric motor, the failure of which caused a portion of Kaiser's plant to be shut down. Kaiser pursued a strict liability theory in its suit to recover its losses. After an examination of the interrelationship of sales and tort law as each has bearing on the strict liability doctrine, Division One of this court concluded Westinghouse's motion for nonsuit at the conclusion of the case was properly granted because: ". . .the doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain "the specifications of the product; and (4) negotiate concerning the risk of loss from defects in it." (*Id.*, at p. 748), since those elements had been established by the evidence.

IKW claims the judgment on the pleadings herein to the same effect was improper because of the absence of similar evidence. Respondents suggest *Kaiser Steel*, when viewed correctly, obviates any question of strict liability in commercial contexts. I agree with IKW.

If it is thought that strict liability as a mode of relief originated as a legal machination selectively intended to benefit particular plaintiffs, it would follow that only an individual "ordinary consumer" could be a beneficiary of the doctrine.

If, on the other hand, it is accepted the doctrine evolved rather from a recognition certain interests which ought to be protected were not cognizable under existing principles of sales law, which created artificial barriers to recovery associated with disclaimers and requirements of privity and notice, and that such interests were those of all plaintiffs within the structure of the market place who were "powerless to protect themselves," a different result is necessary.

Each of these possibilities, of course, may be viewed in the final analysis simply in terms of judicially announced public policy, which alternatively might be embraced or rejected as a matter of philosophy. (See *Scandinavian Airline* v. *United Aircraft* (9th Cir. 1979) 601 F.2d 425, 428.)

██ I am persuaded the latter view is preferable and that strict liability in tort is intended to operate in favor of any person or entity, corporate or otherwise, having no significant bargaining power respecting the manufacturing process and which is thereby best calculated to be its victim. (Cf. *Delta Air Lines, Inc.* v. *Douglas Aircraft Co.* (1965) 238 Cal.App.2d 95 [47 Cal.Rptr. 518].)

Logic, it would seem, likewise requires nothing less. Thus it appears anomolous to permit recovery through the theory to an individual consumer when the item he purchases explodes destroying his house and to deny it to a commercial customer when its plant is similarly damaged, where neither user had any ability to deal with such a risk.

The decision in *Kaiser Steel* is not at odds with this conclusion. Its enumerated criteria, all being present there, compelled the disposition made. Had it been established, however, that in spite of the commercial

setting, Kaiser was unable to negotiate concerning the risk of loss from defects[1] a different result, I think, would have been reached.

In the instant case, the only facts before the trial court bearing upon the defendants' motion for judgment on the pleadings were those appearing in IKW's complaint. Those to be sure disclosed the commercial setting of the transaction between the parties in that they were all corporations involved in one way or another with the purchase of wine by IKW from Nave and that IKW made that purchase for the purpose of resale under its own trademarked private label throughout the United States. Nothing appears, however, which indicates anything about their relative economic strength or ability to negotiate respecting risk of loss from a defective product. (See fn. 1.) Those facts, necessary to the trial court's ruling, could have been established at trial so as to provide a basis for a motion for nonsuit, but they were in no wise present in support of a judgment on the pleadings. The judgment herein must be reversed accordingly.

At the same time, I decline to pass upon appellant's second contention, which I view as not properly before this court. (See Code Civ. Proc., § 43, 6 Witkin, Cal. Procedure (2d ed. 1971) §§ 223-225.) Thus while, for purposes of sound judicial administration and economy in instances where matters are remanded to the trial court following an appeal, appellate courts generally must pass upon and determine all the questions of law involved in the case, that procedure is not required and may well be inappropriate where as here, resolution of such a question may or may not be necessary to the final determination of the case. So, if it is shown that IKW, by virtue of its relative economic strength or ability to negotiate the question of loss, should not be accorded the status of one entitled to assert the doctrine of strict liability, no issue concerning the elements of damages associated with that cause would be considered in the trial court. Accordingly, I am not disposed to address that issue by way of anticipating a showing to the contrary.

The judgment appealed from insofar as it determined appellant IKW's claim founded upon strict liability was not appropriate to the action is reversed and the matter remanded for further proceedings consistent with this opinion.

---

[1] In this regard we note that while each of the four elements discussed in *Kaiser Steel* was found to exist, it should be necessary only to show that the party seeking to invoke the doctrine *could have* negotiated so as to remove from himself the risk of loss from defective products.

FLEMING, J., Concurring and Dissenting—I agree that plaintiff has pleaded a tort cause of action in strict liability against noncontracting parties for property damages, but I take the view that the relative size and bargaining power of plaintiff vis-á-vis the noncontracting parties are inconsequential. For that reason the trial court erred in giving the supplier-defendants judgment on the pleadings on the cause of action for strict liability.

However, I also take the view that plaintiff's damages in its tort action in strict liability against noncontracting parties (as contrasted with its negligence action) are limited to property losses (the wine) and may not include such other economic losses as loss of profits, loss of business opportunity, loss of goodwill, and the like.

Both these principles were outlined by Traynor, C. J., in *Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9 [45 Cal.Rptr. 17, 403 P.2d 145], where in a strict liability cause the court allowed recovery of damages for injury to property but disallowed damages for economic loss. (See the court's discussion at pages 16-19 rejecting damages for economic loss.) In my view the *Seely* opinion recites good law in disallowing recovery for economic loss in tort actions based on strict liability. A supplier now carries the full burden of liability for every kind of loss attributable to his negligence. Under strict liability he additionally carries the full burden of liability for all personal injuries and property losses attributable to defects in his products. Any superimposition in strict liability tort actions of an open-ended responsibility for all economic losses in the chain of distribution must await legislative determination that the manufacturing and distributing processes can absorb unrestricted liability for projects gone agley. At bench, judgment in excess of $1.4 million was sought against the supplier of bottle caps used for an order, or orders, of wine. Suppliers may conclude that assumption of such a huge potential liability is an excessive price to pay to remain in the bottlecap supply business, whose products, in modesty of size, compare with horseshoe nails. And as the proverb tells us, the chain of causality can readily link the loss of a kingdom to the loss of a horseshoe nail.

I would reassert the *Seely* rule, which restricts recovery for economic loss to contract and negligence actions and disallows it in strict liability tort actions.

**BEACH, J.—** I concur on the principal issue herein with the opinion of Roth, P. J. and, joining with the view and reasoning of Fleming, J., dissent on the question whether the issue respecting damages is properly before this court.