92 Cal.Rptr.2d 761 (2000)
78 Cal.App.4th 611
Jeffrey N. STEARMAN et al., Plaintiffs and Appellants,
v.
CENTEX HOMES, Defendant and Appellant.
No. G019311.
Court of Appeal, Fourth District, Division Three.
January 31, 2000.
Rodarti, Feld & Gelfer, Richard G. Feld and Scott H. Gelfer, Newport Beach, for Plaintiffs and Appellants.
*762 Epsten & Grinnell, Douglas W. Grinnell and Luis E. Ventura, El Centro, for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.
Morgenstein & Jubelirer, Jean L. Bertrand and Natasha L. Golding, San Francisco, for Defendant and Appellant.
Paul B. Campos, San Ramon, for Home Ownership Advancement Foundation as Amicus Curiae on behalf of Defendant and Appellant.
Gordon & Rees, Douglas B. Harvey, Robert V. Dugoni and David Collins, San Francisco, for Building Industry Legal Defense Foundation as Amicus Curiae on behalf of Defendant and Appellant.

OPINION
RYLAARSDAM, J.
Defendant Centex Homes appeals from a judgment in favor of plaintiffs Jeffrey and Linda Stearman in a strict liability action arising out of defendant's defective construction of the foundation of plaintiffs' tract home, resulting in severe slab movement and deformation. The defects caused extensive cracks throughout the interior and exterior surfaces of the home.
The issue is not whether a defendant builder of mass produced housing may be held strictly liable for construction defects. The affirmative answer to that question is firmly established in California cases beginning 30 years ago with Kriegler v. Eichler Homes, Inc. (1969) 269 Cal.App.2d 224, 74 Cal.Rptr. 749. (See, inter alia, Fleck v. Bollinger Home Corp. (1997) 54 Cal.App.4th 926, 63 Cal.Rptr.2d 407; Alcal Roofing & Insulation v. Superior Court (1992) 8 Cal.App.4th 1121, 10 Cal.Rptr.2d 844; Becker v. McMillin Construction Co. (1991) 226 Cal.App.3d 1493, 277 Cal.Rptr. 491; Orndorff v. Christiana Community Builders (1990) 217 Cal.App.3d 683, 266 Cal.Rptr. 193; GEM Developers v. Hallcraft Homes of San Diego, Inc. (1989) 213 Cal.App.3d 419, 261 Cal.Rptr. 626; Gentry Construction Co. v. Superior Court (1989) 212 Cal.App.3d 177, 260 Cal.Rptr. 421; Oliver v. Superior Court (1989) 211 Cal. App.3d 86, 259 Cal.Rptr. 160; Huang v. Garner (1984) 157 Cal.App.3d 404, 203 Cal. Rptr. 800; Del Mar Beach Club Owners Assn. v. Imperial Contracting Co. (1981) 123 Cal.App.3d 898, 176 Cal.Rptr. 886; Raven's Cove Townhomes, Inc. v. Knuppe Development Co. (1981) 114 Cal.App.3d 783, 171 Cal.Rptr. 334; Stuart v. Crestview Mut. Water Co. (1973) 34 Cal.App.3d 802, 110 Cal.Rptr. 543; and Avner v. Longridge Estates (1969) 272 Cal.App.2d 607, 77 Cal. Rptr. 633.)
Rather, the question is whether a plaintiff can recover under strict liability when a defect in one component part of a house causes injury to other component parts of the house, but not to persons or property apart from the structure. Defendant asserts such damage constitutes nothing more than "injury to the product itself," a loss for which strict liability compensation is barred by the economic loss rule of Seely v. White Motor Co. (1965) 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145. It argues damage to a defective product itself is simply the product's failure to function properly, for which the only remedy lies in a warranty action through which the disappointed buyer can seek to recoup the benefit of its bargain.
Defendant contends the precise issue here has not been directly decided in California, but to the extent Seely and other appellate courts of this state have touched upon it, they have reached the wrong conclusion, or are poorly reasoned, inapt and nonbinding. We are invited to depart from our own longstanding judicial tradition and, in its place, adopt "the strong majority rule" of other jurisdictions which, according to defendant, have interpreted Seely correctly and would prohibit strict liability recovery under the facts of this case.
Plaintiffs, on the other hand, assert our own courts have considered the economic loss rule in construction and non-construction *763 cases alike, and have uniformly allowed recovery of strict liability damages where, as here, a defect has caused physical damage to the property. They further note a number of other states have applied strict liability to mass-produced housing defects, and thus California is not the "odd-ball" defendant purports it to be. (Plaintiffs have also filed a cross-appeal to which we will turn after concluding our discussion of the appeal.)
Amici curiae expand upon the positions of both parties. From divergent viewpoints, they trace the development of the strict liability doctrine in this state and others, offering sharply conflicting analyses of a dizzying array of authorities (several hundred of them). In the end, after having laboriously trudged our way through the labyrinth, we do not find this to be a particularly complex or close case.
Defendant's premise that the economic loss rule bars strict liability recovery for physical damage to plaintiffs' home is unsupported and indeed contradicted by Seely and other California decisions. (See International Knights of Wine, Inc. v. Ball Corp. (1980) 110 Cal.App.3d 1001, 168 Cal.Rptr. 301 and Gherna v. Ford Motor Co. (1966) 246 Cal.App.2d 639, 55 Cal.Rptr. 94.) Moreover, we are not convinced "the strong majority" of other jurisdictions would, as defendant claims, find plaintiffs confined to a warranty recovery. Indeed, defendant and its amici could cite no more than six out-of-state decisions dealing with analogous facts. Our own research confirms the paucity of cases.
But it really doesn't matter: The answer lies within our state. California authorities read together represent a considerable body of law, expressly or by implication rejecting defendant's assertion that owners whose residences are constructed on defective lots and foundations may not recover in strict liability for resulting physical injury to their homes. We step in line with this law in holding the damage plaintiffs sustained to their home is physical injury falling outside the parameters of economic loss and is thus compensable under strict liability in tort.

FACTS
Defendant is a mass producer of homes in Southern California. In February 1990, plaintiffs bought a Centex tract house in San Clemente. Problems with the property began to appear shortly after plaintiffs moved in and continued over the next few years. In 1993, plaintiffs sued the builder, stating only one cause of action, for strict liability in tort. They alleged defendant constructed the home on inadequately compacted soil, causing slab movement and deformation which, in turn, damaged the structure and yard improvements, diminished the property's value, and required plaintiffs to incur expenses for remedial measures, including employing various professionals to assess the situation and make recommendations.
At trial, plaintiffs and their experts testified to post-construction movement and continuing deformation of the slab foundation which resulted in, inter alia: a significant separation between the ceiling and wall joints over the entire length of the house; cracks in the drywall throughout virtually every room; separation and cracks in tile counters in the bathrooms and kitchen; and cracks in the exterior stucco. Each of these problems worsened over time. Plaintiffs' engineering experts opined the slab foundation would have to be replaced. Plaintiffs' cost estimator testified that replacing the slab would require emptying out the house, disconnecting utility lines, removing appliances, ripping out floors, removing windows and doors, and jacking up the structure. After replacement of the slab, the house would be lowered onto it and virtually rebuilt. Including moving and alternate housing costs for *764 the four months it would take to complete the repairs, the total cost would exceed $260,000.
There is no issue regarding the sufficiency of the evidence to establish the defective construction or resultant damage to the home. However, defendant contended throughout the proceedings that the economic loss rule barred plaintiffs from recovering under strict liability when only damages "to the product itself were claimed. The court rejected this assertion at every juncture, denying defendant's motions for nonsuit and directed verdict and refusing defendant's proposed special instruction which stated, "Plaintiffs are not permitted to recover damages under a strict liability cause of action for purely economic loss or for mere damage to the product itself. [¶] If the only evidence of damages presented by plaintiff[s] establishes purely economic injury or damage to the product itself resulting in the reduction in fair market value of plaintiffs' residence, then you may not award damages to plaintiffs."
The jury returned a special verdict finding plaintiffs' house was defectively constructed, causing plaintiffs damages of $135,000. Defendant then renewed its challenge, reprising the same theme in motions for judgment notwithstanding the verdict and for a new trial, both of which the trial court denied.

DISCUSSION

Defendant's Appeal
In Seely v. White Motor Co., supra, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, widely recognized as the progenitor of the economic loss rule, the court held a commercial trucker who purchased a defective truck was entitled to breach of express warranty damages for lost profits from his heavy-duty hauling business and for money paid on the purchase price, but could not recover these economic losses under strict product liability. (Id. at pp. 13-17, 45 Cal.Rptr. 17, 403 P.2d 145.) Tracing the development of warranty and strict liability law, the Seely court observed "warranty `grew as a branch of the law of commercial transactions and was primarily aimed at controlling the commercial aspects of these transactions.' [Citations.]" (Id. at p. 16, 45 Cal.Rptr. 17, 403 P.2d 145.) It concluded warranty rules "function well in a commercial setting." (Ibid.) Warranty adequately protected the Seely plaintiff, a trucker who "could have shopped around until he found the truck that would fulfill his business needs," and "could be fairly charged with the risk that the product would not match his economic expectations, unless the manufacturer agreed that it would." (Id. at p. 19, 45 Cal.Rptr. 17, 403 P.2d 145, italics added.)
On the other hand, the Seely court reasoned, strict liability for purely economic losses would unjustifiably expose the manufacturer "for damages of unknown and unlimited scope." (Seely v. White Motor Co., supra, 63 Cal.2d at p. 17, 45 Cal.Rptr. 17, 403 P.2d 145.) Explaining, it observed commercial enterprises have widely varying needs which are ordinarily communicated to the dealer, not the manufacturer, who would be liable even though it never agreed the product would perform as a particular purchaser needed it to perform. (Id. at pp. 16-17, 45 Cal.Rptr. 17, 403 P.2d 145.) (In Seely, for instance, the truck proved unsatisfactory for plaintiffs heavy-duty hauling business, but performed well for the subsequent purchaser, who, after the dealer made only minor alterations to the truck, drove it 82,000 miles for a less demanding enterprise.) (Id. at pp. 16-17, 45 Cal.Rptr. 17, 403 P.2d 145.) For this reason and others which we need not reiterate, the court found, "Without an agreement, defined by practice or otherwise, defendant should not be liable for these commercial losses." (Id. at p. 17, 45 Cal.Rptr. 17, 403 P.2d 145, italics added.)
*765 The Seely court did not end its discussion there, however. It added a final paragraph regarding plaintiffs contention the trial court erred in denying strict liability recovery for physical damage to the truck itself. Significantly, the court agreed with plaintiffs argument that "even though the law of warranty governs the economic relations between the parties, the doctrine of strict liability in tort should be extended to govern physical injury to plaintiffs property, as well as personal injury." (Seely v. White Motor Co., supra, 63 Cal.2d at p. 19, 45 Cal.Rptr. 17, 403 P.2d 145, italics added.) The court found "[p]hysical injury to property is so akin to personal injury that there is no reason to distinguish them. [Citations.]" (Ibid.) Plaintiff was barred from recovering strict liability damages for physical injury to the truck not by the economic loss rule, but only because he failed to prove causation. (Ibid.)

Definition and Application of the Economic Loss Rule
The Seely court, drawing a distinction between "tort recovery for physical injuries and warranty recovery for economic loss" (Seely v. White Motor Co., supra, 63 Cal.2d at p. 18, 45 Cal.Rptr. 17, 403 P.2d 145), defines the difference primarily by implication. As we have noted, the decision contains dicta that, had plaintiff proved the truck itself was damaged by the defective condition (the truck tended to "gallop"), he could have recovered strict liability damages. (Id. at p. 19, 45 Cal. Rptr. 17, 403 P.2d 145.)
Other courts in our jurisdiction have articulated the rule more definitively. For instance, Huang v. Gamer, supra, 157 Cal. App.3d 404, 203 Cal.Rptr. 800 instructs, "[E]conomic loss [is] marked by the loss of the benefit of the bargain for the goods purchased, lost profits, and replacement costs for ineffective goods. Physical damage to property and personal injury, however, are not considered to be economic loss." (Id. at p. 420, 203 Cal.Rptr. 800, internal citation and quotation marks omitted, italics added.) In Huang, it was "undisputed ... that the court properly drew the line between economic and physical damages, determining the cost to repair structural and other alleged defects which had not actually caused physical damage to be economic damage." (Mat p. 420, 203 Cal.Rptr. 800, italics added.)
With regard to defects, the Huang plaintiffs presented evidence "that the plans and specifications for the building were defective in several ways, including insufficient fire retardation walls, insufficient shear walls and inadequate structure.... Additional evidence indicated that deviation from the building plans during construction also contributed to faulty construction." (Huang v. Garner, supra, 157 Cal.App.3d at p. 411.) The plaintiffs sought recovery "for physical damages to their property including damages to the structure caused by deflected and cracked beams and dry rot damages to the balcony area. [They] also sought recovery of economic losses including the cost to repair firewalls, shear walls, fire stops, and other alleged defects in the structure which had not caused actual physical damages at the time of trial." (Id. at pp. 419-420, 203 Cal.Rptr. 800, italics added.) The Huang court noted, "Apparently it was agreed by the parties that damages such as the cost to repair allegedly insufficient shear walls, insufficient fire retardation, and defects in the structure which did not cause actual physical damage were in fact economic damages." (Id. at p. 420, 203 Cal.Rptr. 800.)
Huang's definition and application of the economic loss rule, albeit in the context of a negligence theory, demonstrates defendant is just plain wrong in contending the physical damage to plaintiffs' real property caused by defective construction of the foundation is only "an injury to the product itself," and thus barred by the *766 economic loss rule of Seely. Huang does not stand alone. As we will discuss, other cases compel the conclusion that under California law, the physical damages to plaintiffs' property are entirely distinct from economic losses and are thus recoverable in strict liability.
In Gherna v. Ford Motor Co. (1966) 246 Cal.App.2d 639, 55 Cal.Rptr. 94, the product was an automobile in which defective design or manufacture (relating to wiring or placement of the transmission dipstick next to the exhaust manifold) caused a fire, destroying the vehicle. The court did not suggest the product had injured only itself, thus rendering the loss purely economic. Rather, it found the law "settled that the doctrine of strict liability applies to physical harm to person or property." (Id. at p. 649, 55 Cal.Rptr. 94, italics added.)
Anthony v. Kelsey-Hayes Co. (1972) 25 Cal.App.3d 442, 102 Cal.Rptr. 113 expands the analysis. The Anthony plaintiffs did not seek damages arising out of any personal injury to themselves or any physical damage to their vehicles attributable to the wheels they contended were defective. (Id. at p. 445, 102 Cal.Rptr. 113.) Rather, they sought recovery for "(1) general depreciation in the value of the vehicles," which the court categorized as "loss of bargain," "(2) cost of inspections, repairs, and replacements" of the wheels themselves, and "(3) loss of use prior to and during inspections and repairs." (Id. at p. 446, 102 Cal.Rptr. 113.) Any issue as to the second item was moot because plaintiffs had accepted new wheels from the vehicle manufacturer. (Ibid.) In regard to the third claim, the Anthony court observed, "Loss of use is an item of incidental damage. It appears appropriate, therefore, to characterize it according to the nature of the damage of which it is an incident. Unless incidental to physical property damage, it would appear that it may be properly classified as a type of economic loss." (Ibid., italics added.) Harkening to Seely's call, it concluded neither depreciation ("definitely a complaint that the trucks with defective wheels were not of the quality bargained for"), nor loss of use could be recovered under strict liability because plaintiffs did not claim either item was caused by physical property damage. (Id. at p. 447, 102 Cal.Rptr. 113.) Finally, the court distinguished the plaintiffs' case from Gherna and Kriegler v. Eichler Homes, Inc., supra, 269 Cal.App.2d 224, 74 Cal.Rptr. 749, where strict liability recovery was available because "there was ponderable physical property damage to the property sold and purchased." (Anthony v. Kelsey-Hayes Co., supra, 25 Cal.App.3d at p. 448, 102 Cal.Rptr. 113, italics added.)
Sacramento Regional Transit Dist. v. Grumman Flxible (1984) 158 Cal.App.3d 289 (Grumman) sheds additional light on the subject. Plaintiff purchased 103 busses, with the manufacturer's standard written warranty. (Id. at p. 292, 204 Cal.Rptr. 736.) "[P]laintiff discovered a broken fuel tank support during routine maintenance on one of the busses.... Further inspection of all the busses ... revealed that at least 26 ... had the same or similar damage, i.e., cracked fuel tank supports. As a result of further inspection plaintiff determined that all the busses it purchased from defendant would likely suffer the same type of damage unless certain remedial repairs were undertaken." (Ibid.) In addition, plaintiff found "structural defects in the undercarriage battery frame area of certain other busses [previously] purchased from defendant...." (Id. at p. 292, fn. 2, 204 Cal.Rptr. 736.) Plaintiff sought strict liability damages based on these latent defects (Id. at p. 292, 204 Cal.Rptr. 736.)
The Grumman court began its analysis stating, "[Strict liability is imposed not only where the defective product causes personal injury, but also where the defective product causes physical damage to property. [Citations.] The damaged *767 property may consist of the product itself. [Citing Seely, International Knights of Wine, Inc. v. Ball Corp. (1980) 110 Cal. App.3d 1001, 1005 [168 Cal.Rptr. 301] (IKW) and Gherna v. Ford Motor Co., supra, 246 Cal.App.2d at p. 649 [55 Cal. Rptr. 94].]" (Sacramento Regional Transit Dist. v. Grumman Flxible, supra, 158 Cal.App.3d at p. 293, 204 Cal.Rptr. 736, italics added.) It further noted, however, "where damage consists solely of `economic losses,' recovery on a theory of products liability is precluded. [Citations.]" (Id. at p. 293, 204 Cal.Rptr. 736.)
The Grumman court observed, "[T]he line between physical injury to property and economic loss reflects the line of demarcation between tort theory and contract theory." (Sacramento Regional Transit Dist. v. Grumman Flxible, supra, 158 Cal.App.3d at p. 294, 204 Cal.Rptr. 736.) Noting plaintiff did not claim any physical injury to the busses "apart from the manifestation of the defect itself (ibid.), it found the expenses the plaintiff had incurred and would incur for repair of the defects was not recoverable in strict liability, which "presupposes (1) a defect and (2) further damage to plaintiffs property caused by the defect." (Ibid, original italics.) For lack of the requisite damage to the property apart from the defect, the court concluded plaintiffs repair costs were "purely economic damages." (Ibid.)
Responding to plaintiffs reliance on Gherna, supra, 246 Cal.App.2d 639, 55 Cal. Rptr. 94, and IKW, supra, 110 Cal.App.3d 1001, 168 Cal.Rptr. 301, the court distinguished both cases. The Gherna plaintiff had avoided a nonsuit by presenting sufficient evidence "that defective wiring or a design defect consisting of the [improper juxtaposition of component engine/transmission parts] caused a fire which damaged plaintiffs automobile." (Sacramento Regional Transit District v. Grumman Flxible, supra, 158 Cal.App.3d at p. 296, 204 Cal.Rptr. 736, italics added.) The Grumman court impliedly agreed with the Gherna court's conclusion "that products liability affords a remedy to one whose property has been physically injured and ... the remedy is available where the property injured is the defective product." (Ibid.) Moreover, IKW was distinguishable because the plaintiff there alleged "that due to defective caps or defective application of caps the wine became unusable and economic loss was incurred." (Sacramento Regional Transit District v. Grumman Flxible, supra, 158 Cal.App.3d at p. 297, 204 Cal.Rptr. 736, internal quotations marks and citation omitted.) The Grumman court added, "To the extent that IKW may stand for the proposition that a merchant may sue in products liability for physical injury to its property where that injury consists of nothing more than the product defect upon which liability is founded, we decline to follow it." (Ibid., italics added.)
The case of San Francisco Unified School Dist. v. W.R. Grace & Co. (1995) 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305 (Grace) presented the issue in the hybrid context of a statute of limitations question regarding plaintiffs' ability to state a claim arising from the presence of asbestos materials used in construction of the school building. Noting the limitations period did not begin to run until damage occurred, the court considered "what constitutes the element of damage for purposes of strict liability and negligence." (Id. at p. 1327, 44 Cal.Rptr.2d 305.) It stated, "Until physical injury occursuntil damage rises above the level of mere economic lossa plaintiff cannot state a cause of action for strict liability or negligence." (Ibid., fn. omitted.)
Alluding to the rule enunciated in Seely, the Grace court defined economic loss as: "[T]he diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.... [It] generally means pecuniary damage that occurs through loss of value or use of *768 the goods sold or the cost of repair together with consequential lost profits when there has been no claim of personal injury or damage to other property." (San Francisco Unified School Dist. v. W.R. Grace & Co., supra, 37 Cal.App.4th at p. 1327, fn. 5, 44 Cal.Rptr.2d 305, internal quotation marks, italics and citations omitted.) It explained that under Seely, "the reduction of fair market value of buildings found to contain asbestos building materials may constitute an economic loss that cannot be recovered in tort in a strict liability or negligence action. Under the Seely analysis, no physical harm to persons or property has yet occurred only [unrecoverable] economic losses." (Ibid.)
Summarizing asbestos-in-building cases from all over the country, the Grace court noted the issue presented itself in two distinct situations: Cases involving the mere presence of asbestos in the buildings and those in which asbestos contamination had occurred. (San Francisco Unified School District v. W.R. Grace & Co., supra, 37 Cal.App.4th at pp. 1328-1329, 44 Cal.Rptr.2d 305.) It noted in the latter category, "jurisdictions that adopt Seely's physical injury/economic loss distinction routinely find that asbestos contamination constitutes the physical injury element of strict liability or negligence causes of action.... The injury for which asbestos plaintiffs are being recompensed has been found to be the contamination of their buildings, not the mere presence of asbestos." (Ibid.) It concluded, "In order to be consistent with the principles of Seely, it appears that until contamination occurs, the only damages that arise are economic losses that do not constitute physical injury to property recoverable in strict liability[]. Physical injury resulting from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action for strict liability ... can accrue...." (Id. at p. 1330, 44 Cal. Rptr.2d 305.)
Although there is a generous supply of other authorities illustrating the difference between physical damage and economic loss, a brief notation regarding one more recent decision should be sufficient to hammer the point home. Casey v. Overhead Door Corp. (1999) 74 Cal.App.4th 112, 87 Cal.Rptr.2d 603 involved, inter alia, defectively constructed windows in a residential tract. Plaintiffs argued the trial court had improperly precluded their cost estimator expert from testifying to certain damages. The Casey court noted the ruling had correctly barred testimony regarding "economic losses," i.e., the removal and replacement of the windows, but it had not prevented plaintiffs from eliciting testimony "regarding damages which were not `economic losses,'" i.e., the physical damage caused by the defective windows "to the drywall and framing," and the resultant "insect infestation and damage to personal property." (Casey v. Overhead Door Corp., supra, 74 Cal.App.4th at p. 123, 87 Cal.Rptr.2d 603.) For some unknown reason, plaintiffs had simply stipulated "that the cost estimator would not testify that repair would include new drywall, new framing and removal of the insects." (Id. at p. 124, 87 Cal.Rptr.2d 603.) The reviewing court found appellants bound by the admission "they had no evidence to support a claim for any measure of damages other than economic loss." (Ibid.)
Against the background of these decisions, it becomes abundantly clear the case before us does not, in the strict sense, present an issue of first impression. Courts of this state have fully examined the economic loss rule, drawn the line of demarcation between such loss and physical injury to property, including to the defective product itself, and allowed recovery of strict liability damages in the latter instance. Of course, as defendant accurately notes, some cases have apparently assumed physical damages were recoverable. (See, for instance, Kriegler v. Eichler *769 Homes, Inc., supra, 269 Cal.App.2d 224, 74 Cal.Rptr. 749, [California's cornerstone strict liability construction case permitting recovery of strict liability damages where defectively-fabricated radiant heat tubes installed in substandard concrete slab of plaintiffs residence caused failure of the heating system, emergency and permanent repairs, removal of storage and furniture and the need for plaintiff and his family to find temporary replacement shelter]; Avner v. Longridge Estates, supra, 272 Cal. App.2d 607, 77 Cal.Rptr. 633 [no physical injury, but strict liability recovery permissible where portion of rear slope of plaintiffs' tract lot failed twice, lot pad upon which home was built settled due to improper soil compaction and inadequate drainage, and only apparent injury was to the property]; Stuart v. Crestview Mut. Water Co., supra, 34 Cal.App.3d 802, 110 Cal.Rptr. 543 [plaintiffs could maintain strict liability action and recover for loss of home and orchard destroyed in fire as a result of a developer's failure to design and install a system which could deliver an adequate supply and flow of water].) But the fact that these and like cases have not directly discussed the economic loss/physical injury to property dichotomy does not lessen the import of the cases which have. Indeed, the assumption that physical damages to the property are recoverable tends to reinforce, rather than undermine, our conclusion regarding the state of the law in California.
We will not belabor the obvious by engaging in the intellectual nit-picking defendant presses upon us. Moreover, it would it serve no purpose to examine the decisions of other jurisdictions or plumb the niceties of the Restatement Fourth of Torts, Products Liability, section 21, or its predecessor. Here, there is no dispute the defectively constructed foundation resulted in slab movement and deformation causing physical damage to plaintiffs' property, i.e., cracks all over the residence. In light of the these facts, the authorities we have discussed, and the Supreme Court's repeated citing of Kriegler (see, e.g., Peterson v. Superior Court (1995) 10 Cal.4th 1185, 1200, 43 Cal. Rptr.2d 836, 899 P.2d 905; Becker v. IRM Corp. (1985) 38 Cal.3d 454, 460, 213 Cal. Rptr. 213, 698 P.2d 116, overruled in part by Peterson v. Superior Court, supra, 10 Cal.4th at p. 1210, 43 Cal.Rptr.2d 836, 899 P.2d 905; Price v. Shell Oil Co. (1970) 2 Cal.3d 245, 251, 85 Cal.Rptr. 178, 466 P.2d 722), without so much as a hint of the disapproval defendant insists is warranted, we have no difficulty at all finding plaintiffs suffered physical injury to their property, In so concluding, we reject defendant's strained argument that for purposes of product liability law, a home is the equivalent of, for instance, a toaster which, when it catches fire due to faulty wiring, can be said to have injured only itself. The analogy just doesn't fit: When a defective foundation results in cracked walls, ceilings and counter tops throughout the home, recovery of strict liability damages is not barred by the economic loss rule.

Plaintiffs' Cross-Appeal
Plaintiffs contend the trial court erred in denying them recovery of the costs and fees they incurred in employing "geotechnical and structural experts to obtain and analyze soils samples and perform the necessary design calculations" to enable plaintiffs to determine "an appropriate repair methodology to correct the defect." They argue, "These `investigative' costs were completely distinct from the `litigation' costs due these experts," and were properly recoverable as part of the cost of repair. Because the cross-appeal presents a pure question of law, we conduct a de novo review. (Stratton v. First Nat. Life Ins. Co. (1989) 210 Cal.App.3d 1071, 1083, 258 Cal.Rptr. 721.)
During the trial, Glenn Tofani, plaintiffs' soils expert, distinguishing between litigation *770 and investigative costs, testified his firm billed plaintiffs $35,000 for the investigative work performed by it and its subcontractors. Florian Barth, a concrete and structural expert for plaintiffs, testified to between $2,500 and $3,500 in investigative billings and, like Tofani, separated that amount from costs relating to the litigation. Defendant did not cross-examine the experts or otherwise try to contradict the evidence.
Plaintiffs initially proposed a modified BAJI No. 14.20 instruction for including investigative costs as part of the cost of repair. However, the parties subsequently agreed to let the court decide whether these costs were recoverable. After the jury rendered its verdict, plaintiffs filed a memorandum of costs seeking to recover the investigative fees as costs to the prevailing party. However, on the court's instruction, they later filed a motion to recover the fees as cost of repairs damages. Plaintiffs challenge the trial court's denial of that motion.

Expert Fees as Costs
Expenses relating to expert witness fees can arise in two contexts. Under Code of Civil Procedure section 1033.5, subdivision (a)(8), the prevailing party may recover as costs "[f]ees of expert witnesses ordered by the court." (All further statutory references are to the Code of Civil Procedure unless otherwise stated.) The court here did not order plaintiffs' experts to testify, thus expert fees were not recoverable by plaintiffs as costs unless expressly authorized by law elsewhere. (§ 1033.5, subd. (b)(1).) Inter alia, section 998 gives the court discretion to order a defendant to pay "a reasonable sum to cover costs of the services of [plaintiffs] expert witnesses" if the defendant rejects plaintiffs statutory offer to compromise and fails to obtain a more favorable judgment at trial. (§ 998, subd. (d).)
Plaintiffs perforce contend the fees and costs they seek are not expert fees under sections 998 and 1033.5. The argument is necessary because, prior to trial, plaintiffs served a section 998 offer to compromise their claims against defendant in exchange for $225,000. Defendant rejected the offer, and the jury awarded plaintiffs $90,000 less than the statutory offer. Thus, under section 998, defendant obtained "a more favorable judgment" than the statutory offer, depriving the trial court of discretion to order defendant to pay plaintiffs' expert fees.

Expert Fees as Damages
Having eliminated any potential consideration of the expert witness fees as costs, plaintiffs contend they are entitled to recover the fees as damages. Citing Raven's Cove Townhomes, Inc. v. Knuppe Development Co., supra, 114 Cal.App.3d 783, 171 Cal.Rptr. 334, they argue, and for purposes of the cross-appeal defendant concedes, the cost of repair is the proper measure of damages in a construction defect case. (Id. at p. 802, 171 Cal.Rptr. 334.) Civil Code section 3333 provides, "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." As the Raven's Cove court concluded, since tort damages are intended to make the injured plaintiff whole, "the proper measure of damages [in a construction defect case] is the cost of remedying the defects ... together with the value of the lost use (if any) during the period of injury." (Raven's Cove Toumhomes, Inc. v. Knuppe Development Co., supra, 114 Cal.App.3d at p. 802,171 Cal.Rptr. 334.)
Regan Roofing Co. v. Superior Court (1994) 21 Cal.App.4th 1685, 27 Cal.Rptr.2d 62 is informative. There, the issue arose in the context of a good faith settlement motion involving the nonsettling defendants' *771 objection to allocation of $250,000 for expert investigation fees. (Id. at p. 1694, 27 Cal.Rptr.2d 62.) The court correctly reasoned, "It would be proper to view this $250,000 expert expense as damages due for a portion of the cost of repair, which is an appropriate measure of damages in cases based on damage to real property. [Citations.]" (Id. at p. 1709, 27 Cal.Rptr.2d 62.) Defendant asks us to disregard Regan Roofing because it involved a settlement, not a trial. We find no meaningful distinction.
The record is clear the court denied plaintiffs' motion, not because it doubted the credibility of the expert witnesses, but because it believed the law did not allow it to require defendant to pay the expert fees, even if they were incurred solely in relation to the costs of repair. The court was wrong. Plaintiffs were entitled to be made whole.
Defendant protests that all litigation expenses are at least arguably caused by the wrong out of which the lawsuit arises, and yet the Legislature has determined expert expenses are recoverable, if at all, as costs, not as damages. In support of their argument, they cite Ripley v. Pappadopoulos (1994) 23 Cal.App.4th 1616, 28 Cal.Rptr.2d 878, which states, "[Compensation of an expert is, in the first instance, the responsibility of the party who hires the expert." (Id. at p. 1624.) Ripley is inapt: It considers the issue of costs under sections 1032 and 1033.5, not damages under Civil Code section 3333.
Because the uncontradicted testimony established plaintiffs were billed $37,500 by professionals who investigated the problems in order to formulate an appropriate repair plan, it would serve no purpose to remand the issue for further consideration. Sections 43 and 906 give an appellate court power to modify a judgment and direct the trial court to enter the proper judgment. That authority will be exercised when, as here, the record shows the parties' rights can be determined fully on appeal. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 744, p. 773 and eases cited therein.)

DISPOSITION
The order denying plaintiffs' motion to recover expert fees as damages is reversed. The judgment in favor of plaintiffs is modified to include an additional $37,500 representing those damages. As so modified, the judgment is affirmed. Plaintiffs shall recover their costs on appeal.
CROSBY, Acting P.J., and BEDSWORTH, J., concur.