[No. B229946. Second Dist., Div. Eight. Feb. 23, 2012.]

GLEN OAKS ESTATES HOMEOWNERS ASSOCIATION, Plaintiff and Appellant, v.
RE/MAX PREMIER PROPERTIES, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part 2. of the Discussion.

**COUNSEL**

Castro & Associates, Joel B. Castro, David H. Pierce, Toneata Martocchio, J. Alan Warfield; Law Office of Morton Minikes and Morton Minikes for Plaintiff and Appellant.

Carlson Law Group, Mark C. Carlson, Jonathan A. Feldheim; Sedgwick and Douglas J. Collodel for Defendants and Respondents Loeffler and Bathke Properties Realtors, Inc., Priscilla Siew-Lin Yim and Margaret M. Huang.

Spile, Siegal, Leff & Goor, Richard L. Goor, Andrew L. Leff and Michael J. T. Wilson for Defendants and Respondents DG Real Estate, Inc., and Marklin Malone.

## OPINION

**FLIER, J.**—Appellant Glen Oaks Estates Homeowners Association (the HOA) appeals from judgments entered against it after the trial court sustained demurrers to its first amended complaint (FAC). Respondents are two groups of realtors: (1) Loeffler and Bathke Properties Realtors, Inc., doing business as Re/Max Premier Properties, Inc., Priscilla Siew-Lin Yim, and Margaret M. Huang and (2) DG Real Estate, Inc. (erroneously sued as Dilbeck, Inc.), doing business as Dilbeck Realtors GMAC Real Estate and Marklin Malone.[1] The trial court sustained the demurrers on standing and statute of limitations grounds. We affirm in part and reverse in part.

## FACTUAL BACKGROUND[2]

The HOA is a nonprofit, mutual benefit, unincorporated association responsible for the operation, maintenance, and management of the common area serving the five parcels of Glen Oaks Estates. Glen Oaks Estates is located in Pasadena, California. The members of the HOA consist of the owners of the five parcels in Glen Oaks Estates.

The FAC alleges that the Realtors acted as the sellers' agents for the developers of Glen Oaks Estates and assisted the developers in marketing and selling the parcels. The Realtors were dual agents in that they also represented the HOA members as buyers' agents. Re/Max acted as dual agent in the sale of three parcels in Glen Oaks Estates, and Dilbeck acted as dual agent in the sale of one parcel in Glen Oaks Estates.

On or about January 9, 2005, a significant slope failure occurred along parts of the Glen Oaks Estates common slope area and common driveway. In

---

[1] Loeffler and Bathke Properties Realtors, Inc., doing business as Re/Max Premier Properties, Priscilla Siew-Lin Yim, and Margaret M. Huang are referred to hereafter as "Re/Max." DG Real Estate, Inc., doing business as Dilbeck Realtors GMAC Real Estate and Marklin Malone are referred to hereafter as "Dilbeck." Both groups of realtors are collectively referred to hereafter as the "Realtors."

[2] We base the factual summary on the allegations of the FAC, attachments to the FAC, and matters that the trial court judicially noticed.

the aftermath of this landslide, a negligence lawsuit was filed against the HOA and two of its members on December 19, 2007: *DePaul v. Glenoaks Estates Homeowners Assn.* (Super. Ct. L.A. County, No. GC040069) (*DePaul* case). The HOA filed a cross-complaint in the *DePaul* case against the developers for indemnity and contribution. On September 10, 2008, the developers served verified responses to requests for production of documents in the *DePaul* case. The HOA received a compact disc containing the developers' responsive documents on February 9, 2009.

Among the documents produced by the developers was a letter dated December 28, 2000, from Re/Max to the developers, which the HOA attached to the FAC. The HOA alleges the letter falsely advised the developers that the Department of Real Estate (DRE) did not require a homeowners association for Glen Oaks Estates. The letter further advised the developers to lower the amount of the homeowners association monthly dues so that buyers would not "back out" from escrow. The HOA alleges that Re/Max and the developers collaborated to create a false and misleading budget and provided that false budget to the HOA members.

The documents produced by the developers also included a DRE "File Abandonment Notice" executed by one of the developers, which declined to file an application for a final public report on Glen Oaks Estates. The HOA also attached this to the FAC. The HOA alleges that until it discovered the abandonment notice in the developers' document production, it did not know that the developers and the Realtors were required to provide a final public report to each buyer, which would have included a DRE-approved budget worksheet and "other material transactional disclosures and documents."

The HOA also alleges the Realtors received multiple soil reports by Pioneer Soils Engineering, Inc. (Pioneer), which included analyses of the common areas in Glen Oaks Estates. The analyses were used as the basis for the construction of the common roadway and common area slopes. The Realtors allegedly received material information that Pioneer may not have been validly licensed and that the soil reports were illegal or unreliable. First, Pioneer allegedly admitted that it did not have "errors and omissions" insurance. Second, certain soil reports lacked a signature by an engineer or geologist and/or an official marking of an engineer or geologist. Third, the body of one or more soil reports referenced testing, investigation, and grading of property in Fullerton rather than at Glen Oaks Estates. And fourth, the body

of one or more soil reports referenced a nonexistent Pioneer report. The HOA alleges that the Realtors either did not provide these soil reports to the HOA members, or gave them these soil reports without any warning as to their potential defects.

The gravamen of the claims against the Realtors is that, had they acted fairly, honestly, and consistent with their fiduciary duties, the HOA members would have received an accurate budget and the transactional documents required by law and DRE regulations (such as the public report), and they would have known the soil reports were illegitimate. If the HOA members had this information, they allegedly would not have purchased their homes, would not be embroiled in third party litigation arising from the landslide, and would not be responsible for certain expenses to repair the common areas of Glen Oaks Estates.

## PROCEDURAL BACKGROUND

The HOA filed its original complaint on February 25, 2010. After the court sustained the Realtors' demurrers to the complaint, the HOA filed the FAC on June 4, 2010. The FAC alleges four causes of action against the Realtors collectively and two causes of action against Re/Max only.[3]

First, the FAC alleges the Realtors engaged in unfair business practices (Bus. & Prof. Code, § 17200) by violating the Subdivided Lands Act (Bus. & Prof. Code, § 11018.1), which requires that the owner, subdivider, or real estate agent give buyers a public report regarding the property and other transactional documents prior to execution of the sale contract. Second, it alleges the Realtors engaged in unfair business practices through false advertising (Bus. & Prof. Code, §§ 17200, 17500) because they failed to disclose in flyers and other publications that Glen Oaks Estates was a "common interest development" subject to the requirements of the Subdivided Lands Act and the regulations of the DRE. Third, the FAC alleges the Realtors breached their fiduciary duties to the members of the HOA by failing to provide a final public report, a DRE-approved budget, and other required disclosures and transactional documents pursuant to the Subdivided Lands Act. It further alleges that these breaches and/or unfair practices were a substantial factor in the members' purchase of the Glen Oaks Estates parcels because they would not have purchased had they received the required documents; the documents would have revealed the defective condition of the common area roads and slopes.

---

[3] The FAC also alleges causes of action against the developers. The developers are not parties to this appeal.

Fourth, the FAC alleges that Re/Max intentionally misrepresented or concealed material facts from the members of the HOA by advising the developers to lower the monthly HOA dues so that the parcels would not fall out of escrow, and then Re/Max intentionally provided a false budget and deceptively low monthly dues statements to members. Had the members known the budget was inaccurate and misleading, they allegedly would not have purchased their parcels. Fifth, the FAC alleges Re/Max engaged in unfair business practices when it "low-balled" the budget and advised the developers to lower monthly dues. Sixth, and finally, the FAC alleges that the Realtors breached their fiduciary duties to the members by failing to investigate whether the Pioneer soil reports were legitimate or failing to warn the members that the reports might not be legitimate, despite "undeniable" bases for questioning the reliability or validity of the reports.

The Realtors demurred to the causes of action in the FAC. The court sustained the demurrers without leave to amend, ruling as follows: "The action against demurring defendants Re/Max and Dilbeck is barred by the statute of limitations. . . . Based on the allegations, it appears that all purchases occurred prior to February 2001 and the slope failure occurred in 2005. The complaint was filed on February 25, 2010, after the expiration of the statute of limitations set forth in CCP 338 and CC 2079.4. Finally, plaintiff lacks standing to assert a claim against moving defendants based on concealment and/or misrepresentation. The complaint alleges that individual members were induced into purchasing lots based on defendants' misrepresentations and concealments (i.e., failure to provide a final public report, DRE approved budget and required disclosures). Such claims belong to the individual homeowners, not plaintiff HOA."

The court entered judgment in favor of the Realtors on October 18, 2010. This timely appeal followed.

## STANDARD OF REVIEW

When the trial court sustains a demurrer, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].) " 'As a reviewing court we are not bound by the construction placed by the trial court on the pleadings but must make our own independent judgment thereon, even as to matters not expressly ruled upon by the trial court.' " (*Marina Tenants Assn. v. Deauville Marina Development Co.*

(1986) 181 Cal.App.3d 122, 127 [226 Cal.Rptr. 321].) We accept as true all properly pleaded material factual allegations of the complaint and other relevant matters that are properly the subject of judicial notice, and we liberally construe all factual allegations of the complaint with a view to substantial justice between the parties. (*Ibid.*) We also consider any exhibits to the complaint. (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 [102 Cal.Rptr.3d 72].)

When the trial court sustains a demurrer without leave to amend, we review that decision for abuse of discretion. (*Hernandez v. City of Pomona, supra,* 49 Cal.App.4th at p. 1497.) We will reverse for abuse of discretion if we determine that there is a reasonable possibility the plaintiff can cure the pleading by amendment. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

## DISCUSSION

The HOA argues that the trial court erred in sustaining the demurrers because it has standing to pursue the claims of its members, and furthermore, its claims are timely under the discovery rule and/or the doctrine of fraudulent concealment. We address standing and the statute of limitations seriatim.

### 1. *Standing*

The HOA contends that it has standing under Civil Code section 1368.3,[4] or alternatively, under Code of Civil Procedure section 382. We agree that section 1368.3 confers standing.

The HOA maintains that it has standing to bring this action pursuant to section 1368.3, part of the Davis-Stirling Common Interest Development Act (CIDA) (§ 1350). In pertinent part, section 1368.3 states that "[a]n association established to manage a common interest development has standing to institute, defend, settle, or intervene in litigation . . . in its own name as the real party in interest and without joining with it the individual owners of the common interest development . . . ."[5] But such associations have standing

---

[4] All further statutory references are to the Civil Code unless otherwise indicated.

[5] The FAC alleges that Glen Oaks Estates is a "common interest development" within the meaning of the CIDA. (§ 1351, subds. (c)(3), (k).) At least at this stage, the parties do not dispute that Glen Oaks Estates is a common interest development and that the HOA is an "association established to manage a common interest development."

only in particular matters, specifically "matters pertaining to" (1) "[d]amage to the common area," and (2) "[d]amage to a separate interest that arises out of, or is integrally related to, damage to the common area . . . ." (§ 1368.3, subds. (b), (d).)[6] The HOA argues that while the right violated was "personal to the members" in that the Realtors owed the HOA members a fiduciary duty, their damages consist of a $3 million repair obligation for the common area driveway and slopes. Thus, they contend, the matter "pertain[s] to" damage to the common area. Even if this was not the case, they allege their personal interests have been damaged, and such damage is integrally related to damage to the common area.

The CIDA defines a "[s]eparate interest" as "a separately owned lot, parcel, area, or space." (§ 1351, subd. (*l*)(3).) It defines a "[c]ommon area" as "the entire common interest development except the separate interests therein." (§ 1351, subd. (b).) The FAC does not allege damage to the HOA members' separately owned lots or parcels. Therefore, the subdivision conferring standing when matters pertain to damage to a "separate interest" that is integrally related to damage to the common area does not apply.

The allegations of the FAC are sufficient, however, to show the matter pertains to damage to the common areas. The theory alleged in the FAC is that the HOA members would not have purchased their homes in Glen Oaks Estates had the Realtors acted as proper fiduciaries, not concealed information relating to the budget, warned them about the alleged invalid soil reports, and/or complied with the laws requiring them to provide a final report and other transactional documents. But because they did purchase their homes, the FAC alleges the HOA is now embroiled in third party actions arising from the failure of the common area slopes and roadway, and it is responsible for certain expenses to repair the common areas. The causes of action against the Realtors allege damages in an amount over $3 million—or in the case of the unfair business practices claims, "injury in fact" and "lost money or property"[7]—that includes, among other things:

---

[6] Section 1368.3 also confers standing in matters pertaining to enforcement of the association's governing documents or "[d]amage to a separate interest that the association is obligated to maintain or repair." (§ 1368.3, subds. (a), (c).) These subdivisions are not relevant for our purposes.

[7] The HOA cannot claim damages for the unfair business practices claims because relief under these claims is limited to injunctive relief and restitution. (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1288 [119 Cal.Rptr.2d 190].) Nevertheless, the statutory scheme requires a private party bringing these claims to have "suffered injury in fact" and "lost money or property as a result of" the unfair practices. (Bus. & Prof. Code, §§ 17204, 17535.)

—investigative costs associated with the repair and replacement of the damaged common area improvements, pursuant to *Stearman v. Centex Homes* (2000) 78 Cal.App.4th 611 [92 Cal.Rptr.2d 761];[8]

—the amount to properly landscape the manufactured slopes of common areas that were not landscaped and/or were not properly landscaped with an adequate quantity or correct type of planting materials, irrigation, and drainage systems;

—the amount omitted from the budgetary analysis that is required to stabilize and perform the repair, restoration, and construction of the common areas, common area slopes, and common roadway.

■ These allegations are sufficient to show the matter pertains to damage to the common area. Section 1368.3 therefore confers standing.

■ Dilbeck argues that section 1368.3 does not apply because the statute may confer standing to sue a *developer* for damages to the common area, but not a *realtor* like Dilbeck. But the statute does not, by its plain terms, contain a limitation on whom the HOA may sue, nor does Dilbeck provide any other authority for this assertion. Both Dilbeck and Re/Max also argue that the HOA does not have standing because realtors owe no duties to third parties who were not parties to the contract of sale, and the HOA was not a party to the contracts between the Realtors and the HOA members. In support, they cite *Coldwell Banker Residential Brokerage Co. v. Superior Court* (2004) 117 Cal.App.4th 158 [11 Cal.Rptr.3d 564] (*Coldwell Banker*). In *Coldwell Banker*, a home buyer's minor son sued the seller's real estate broker for breaching various duties of care, including failing to disclose microbial contamination in the home. (*Id.* at p. 161.) The court held that the broker owed a statutory duty of care to the minor's parent, the buyer, but not to the minor, who was not a party to the transaction. The court therefore held that the broker's demurrer to the complaint should have been sustained. (*Id.* at pp. 165–166, 169.)

■ The Realtors' reliance on *Coldwell Banker* is misplaced. The HOA does not allege that the Realtors owed the HOA any duties, and we are not

---

[8] *Stearman v. Centex Homes, supra*, 78 Cal.App.4th at page 625 held that the plaintiff could recover expert fees as damages, not costs, when the expert was retained to investigate and formulate a repair plan in a construction defect case.

creating a rule that extends realtors' duty of care beyond parties to the transaction. We are dealing here with a specific legislative grant of standing that permits an association to bring the claims of its members. The stranger to the transaction in *Coldwell Banker* had no such basis for standing. *Windham at Carmel Mountain Ranch Assn. v. Superior Court* (2003) 109 Cal.App.4th 1162 [135 Cal.Rptr.2d 834] (*Windham*) is instructive. The homeowners association in *Windham* sued the developer of the association members' condominiums for breach of implied warranty. (*Id.* at p. 1166.) The developer demurred, arguing that the association did not have the requisite privity of contract to maintain a cause of action for breach of implied warranty. (*Id.* at p. 1167.) The court disagreed, holding that the predecessor statute to section 1368.3 supplied the requisite privity.[9] The statute gave "associations the standing to sue as real parties in interest in *all* types of actions for damage to common areas, including breach of implied warranty causes of action," and it thus necessarily granted associations privity of contract to state those causes of action. (*Windham,* at p. 1175.) Similarly, here, the legislative grant of standing confers with it the privity necessary to bring the HOA members' claims.

Having determined that Civil Code section 1368.3 supplies standing, we need not address the HOA's alternative argument that it has standing under Code of Civil Procedure section 382.

2. *Statute of Limitations**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgments of dismissal are affirmed in part and reversed in part. The trial court shall vacate its order sustaining Dilbeck's demurrer without leave to amend and enter a new order sustaining the demurrer to the fifth, sixth, and ninth causes of action without leave to amend, and overruling the demurrer to the seventh cause of action. The trial court shall vacate its order sustaining Re/Max's demurrer without leave to amend and enter a new order sustaining the demurrer to the fifth, sixth, and ninth causes of action without leave to

---

[9] Civil Code section 1368.3 was formerly codified in Code of Civil Procedure section 383, subdivision (a); it was renumbered to section 1368.3 in 2004 without substantive change. (Cal. Law Revision Com. com., 8 West's Ann. Civ. Code (2007 ed.) foll. § 1368.3, p. 334.)

*See footnote, *ante*, page 913.

amend, and overruling the demurrer to the seventh, eighth, and 10th causes of action. The matter shall proceed in accordance with the views expressed in this opinion. The parties shall bear their own costs on appeal.

Rubin, Acting P. J., and Grimes, J., concurred.