[No. B143068. Second Dist., Div. Five. Oct. 5, 2001.]

MICHAEL J. MACK, Plaintiff and Appellant, v.
THE STATE BAR OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Gerry & Lear, Kevin Gerry and Marisol Ocampo for Plaintiff and Appellant.

Marie M. Moffat, Lawrence C. Yee, Richard J. Zanassi, Colin P. Wong and Robert M. Sweet for Defendant and Respondent.

**OPINION**

**WILLHITE, J.**\*—Plaintiff Michael J. Mack appeals from the order dismissing his complaint against the State Bar of California after the court granted the State Bar's motion for judgment on the pleadings. For the reasons set forth below, we affirm the order.

### FACTS AND PROCEDURAL HISTORY

Plaintiff and appellant Michael J. Mack (Mack) is an attorney licensed to practice law in California. In 1994, defendant and respondent the State Bar of California (State Bar) filed disciplinary charges against Mack. On January 20, 1995, Mack stipulated to the facts alleged in the State Bar's complaint and agreed to accept a private reproval as discipline for his misconduct. In exchange, the State Bar agreed to dismiss four of the five pending charges.[1]

An attachment to the stipulation cautioned Mack that even though the reproval was private, it was still a matter of public record: "The parties understand that although this reproval is termed 'private,' it arises in a public proceeding. Although the State Bar of California will not affirmatively provide any publicity to the disposition, the file, including the stipulation, [and] any order approving it, in this case will remain public and will be available on any specific inquiry by a member of the public."

Stipulations must be approved by a judge of the State Bar Court. (Rules Proc. of State Bar, rule 135.)[2] On February 27, 1995, a State Bar judge filed an order approving the stipulation, with certain minor modifications. The order stated that it constituted "a letter of PRIVATE reproval in the name of the State Bar of California to [Mack] pursuant to rule 270 . . . ." Stamped across the caption page of the order was the statement, "NOT FOR PUBLICATION."

On March 8, 1999, Mack learned that the State Bar was posting his disciplinary history on the State Bar's Internet Web site. The Web page bears the heading, "Member Records Online." It gives Mack's State Bar number, confirms that he is an active member of the bar and notes that he "has a public record of discipline." The page goes on to state: "The following is a generic statement regarding discipline and <u>not a description of this particular member's discipline</u>. Discipline consists of one or more of the

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] The precise details of the charges are not relevant to this appeal.

[2] Unless otherwise indicated, all further rule references are to the Rules of Procedure of the State Bar.

following: private reproval with public disclosure, public reproval with duties, discipline with actual suspension, disciplinary probation with no actual suspension, suspension for failure to pass the Professional Responsibility Examination and/or disbarment." (Original underscoring.) The viewer is then prompted to "click" an indicated spot to obtain definitions of those terms. The page concludes by stating that it is necessary to contact the State Bar directly, by phone or in writing, and pay a charge, in order to obtain "discipline information specific to this member, . . ."

Contending that this violated the stipulation's prohibition against affirmatively publicizing the discipline, Mack demanded that the State Bar delete the information from its Web site. The State Bar refused.

In July 1999, Mack filed a petition with the Supreme Court, seeking a writ of mandate or prohibition. (Code Civ. Proc., §§ 1085, 1086, 1102, 1103; Cal. Rules of Court, rule 56.) The State Bar opposed the petition, contending that its Web site merely offered a far more efficient means of providing public access to the State Bar's public records of attorney discipline. The Supreme Court summarily denied the petition on September 1, 1999.

On December 13, 1999, Mack sued the State Bar for breach of the stipulation, seeking damages and injunctive and declaratory relief. A photocopy of the disputed Web page was attached as an exhibit to Mack's complaint. Mack alleged that the State Bar breached the terms of the stipulation by posting the record of his public discipline on the State Bar's Web site. The State Bar filed a motion for judgment on the pleadings in March 2000. The motion raised the following arguments: (1) Mack failed to comply with the claim filing requirements of the Government Tort Claims Act; (2) the State Bar lacked the ability and intent to form an enforceable agreement; (3) the State Bar was statutorily immune for its actions; (4) the State Bar did not breach the agreement because simply making the information available on its Web site did not amount to affirmatively publicizing Mack's disciplinary history; (5) the Supreme Court's denial of Mack's petition for mandate was res judicata of his claims; and (6) the superior court lacked subject matter jurisdiction.[3]

By minute order dated May 17, 2000, the court granted the motion on all grounds raised by the State Bar. A concomitant order dismissing the complaint with prejudice was entered June 9, 2000. This timely appeal followed.

---

[3]We affirm based solely on the fourth ground: The State Bar's use of the Web site did not breach the stipulation. Accordingly, we need not reach the other grounds raised below.

## Standard of Review

■ A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same standard of review. All material facts which were properly pleaded are deemed true, but not contentions, deductions, or conclusions of fact or law. If leave to amend was not granted, we determine whether the complaint states a cause of action and whether the defect can reasonably be cured by amendment. If the pleading defect can be cured, the trial court committed reversible error. If not, we affirm. The plaintiff bears the burden of proof on this issue. Finally, the judgment will be affirmed if it is proper on any grounds raised in the motion even if the court did not rely on those grounds. (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 989 [94 Cal.Rptr.2d 643].)

In addition to the facts pleaded, we may consider matters which may be judicially noticed, including a party's admissions or concessions that can not reasonably be controverted. (*Pang v. Beverly Hospital, Inc., supra,* 79 Cal.App.4th at pp. 989-990.) We may take judicial notice of the records of a California court. (Evid. Code, § 452, subd. (d).) We must take judicial notice of this state's decisional and statutory law, including the State Bar's rules of procedure. (Evid. Code, § 451, subd. (a); *Werner v. Hearst Publications, Inc.* (1944) 65 Cal.App.2d 667, 671 [151 P.2d 308].)

## Discussion

■ Once the State Bar initiated disciplinary proceedings against Mack, the records of those proceedings became public. (Bus. & Prof. Code, § 6086.1, subd. (a).) When a private reproval is imposed after that time, it becomes "part of the [lawyer's] official State Bar membership records and is disclosed in response to public inquiries . . . ." (Rule 270(c).)[4]

---

[4]We quote from the version of rule 270 in effect when the events in dispute took place. Effective July 1, 2000, rule 270(c) was amended to state that a private reproval is disclosed in response to public inquiries "and is reported as a record of public discipline on the State Bar's web page." (23 pt. 3 West's Ann. Codes, Court Rules (2001 supp.) rule 270, p. 156.) We asked for supplemental briefing on the applicability of this rule change, but the parties' briefs shed little light on the issue.

We note that during oral argument, Mack's lawyer referred to certain State Bar documents concerning the recent amendment of rule 270(c), which were attached to his unsolicited letter brief. On June 5, 2001, we denied permission to file the brief because it was unsolicited, and because the various documents attached to it were not authenticated, were not accompanied by a request to judicially notice them, and no legal basis for judicial notice was offered. (*East Bay Asian Local Development Corp. v. State of California* (2000) 24 Cal.4th 693, 710, fn. 5 [102 Cal.Rptr.2d 280, 13 P.3d 1122]; *Johnson v. Superior Court* (1994) 25 Cal.App.4th 1564, 1569, fn. 2 [31 Cal.Rptr.2d 199].) Mack contends that the material shows the amendment was

Mack does not dispute that his disciplinary history was a public record. Instead, he contends that the language of the stipulation prohibiting affirmative publicity of the reproval meant that the information would be limited "to those few individuals telephoning the State Bar specifically to inquire about his private reproval." Noting that the State Bar will send press releases regarding more severe forms of discipline to various legal publications, Mack claims that allowing Internet access to the information is far worse since the information is perpetually available to a potentially worldwide audience. If he had known the State Bar "would affirmatively publicize and disseminate news of his private reproval, through the utilization of the greatest technological means possible, . . . [he] would have never agreed to the Stipulation."

As support for his position, Mack points to the stamped directive that the State Bar court's order was not for publication. Citing to various federal authorities which hold that publication occurs when material is made available on an Internet Web site, Mack contends the State Bar affirmatively published his reproval in violation of their stipulation.

We agree that the State Bar published Mack's disciplinary history by posting it on its Web site. However, publication is not at issue. Had the State Bar merely disclosed Mack's reproval in response to phone inquiries, it would still have published the information. He cannot seriously contend that the "not for publication" stamp meant the State Bar would not release the information upon request. At issue here is whether the State Bar has simply found a newer and better way of making its public records available, or has instead affirmatively publicized those records. The answer can be found at the confluence between new technology and the public's right to view public records.

Under the California Public Records Act (Gov. Code, § 6250 et seq. (CPRA)), there is a strong public policy favoring the disclosure of public records. (Gov. Code, §§ 6250, 6252, subds. (a), (b); *Lorig v. Medical Board* (2000) 78 Cal.App.4th 462, 467 [92 Cal.Rptr.2d 862].) The Legislature has declared that access to public records is a "fundamental and necessary right . . . ." (Gov. Code, § 6250.) Since the State Bar is a constitutional entity that serves as an administrative arm of the Supreme Court, the CPRA apparently does not apply to it.[5] (Cal. Const., art. VI, § 9; Gov. Code, § 6252, subd. (a); *In re Attorney Discipline System* (1998) 19 Cal.4th 582,

---

to apply prospectively, precluding its applicability here. For purposes of our decision, we assume that the amended version of rule 270 applies only prospectively.

[5]We say "apparently" because no reported decision has so held. We need not decide that issue and assume for discussion's sake only that the CPRA is inapplicable here.

598-600 [79 Cal.Rptr.2d 836, 967 P.2d 49]; *Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 111 [7 Cal.Rptr.2d 841] *(Copley Press)* [CPRA not applicable to the court system].) Even if we were to treat State Bar disciplinary records as ordinary court records, both decisional law and state and federal constitutional principles have established a powerful public right of access to those records. *(Copley Press, supra,* 6 Cal.App.4th at pp. 111-112.)

"The Internet is 'a unique and wholly new medium of worldwide human communication.' " *(Reno v. American Civil Liberties Union* (1997) 521 U.S. 844, 850 [117 S.Ct. 2329, 2334, 138 L.Ed.2d 874], fn. omitted.) "It enables people to communicate with one another with unprecedented speed and efficiency and is rapidly revolutionizing how people share and receive information. . . ." *(Blumenthal v. Drudge* (D.D.C. 1998) 992 F.Supp. 44, 48 *(Blumenthal).)* The Internet is not a physical or tangible entity. Instead, it is a giant network that interconnects countless smaller groups of linked computer networks. It is a vast, decentralized collection of documents containing text, visual images, and audio clips designed to be accessible from every Internet site in the world. As such, it has no territorial boundaries. *(Ibid.)*

The use of new technologies can be both burden and curse. The Internet is no different. While it provides millions of us with nearly instantaneous access to the free exchange of ideas and information, it has also posed unprecedented challenges relating to privacy and reputational rights, the control of pornography, and the spread of unverified news reports. "Needless to say, the legal rules that will govern this new medium are just beginning to take shape." *(Blumenthal, supra,* 992 F.Supp. at p. 49.)

In response to the State Bar's use of this new technology, Mack makes a Luddite's argument: The State Bar should not use the Internet to provide public access to his record of discipline because it will now be too readily available.[6] However, contrary to Mack's assertion, the State Bar's Web site does not violate the stipulation by affirmatively publicizing his reproval. Instead, it simply permits the State Bar to respond much the same as it would to a telephone caller seeking to learn about Mack's background. That is, the State Bar simply makes the records available on the Web site upon request. Mack himself admits that responding to telephone inquiries about his disciplinary history would not violate the stipulation. Use of the Internet to search out a lawyer's membership records and examine his public record of discipline might be easier and it might be faster than use of the telephone, but it

---

[6]The Luddites were British laborers of the early 19th century opposed to the use of labor-saving devices. (Webster's 9th New Collegiate Dict. (1988) p. 709.)

is fundamentally no different. The information exchange takes place between computer systems, but still passes over phone lines. In order to obtain the information, the inquiring party must specifically ask for membership information about a particular member. In response, the information is provided, albeit cybernetically.[7] As per former rule 270(c), the information is only "disclosed in response to public inquiries, . . . ." In accordance with the stipulation, the records are made "available on any specific inquiry by a member of the public."

While this information is now theoretically available around the globe, we doubt that Internet users in India, much less Indiana, will be scouring the State Bar's Web site for information about Mack or any other California lawyer. As a practical matter, the Web site will most likely be used by those who have reason to inquire. In any event, the records are public.

As for Mack's assertion that Internet access was beyond his contemplation when he entered the stipulation in 1995, we note that the Internet was not in its infancy and was not some futurist's flight of fancy. By February 1996, it had prompted Congress to pass the Communications Decency Act of 1996. (47 U.S.C. § 230; *Blumenthal, supra,* 992 F.Supp. at p. 49.) Regardless, Mack knew his disciplinary history would become a public record that would be available on request. He could not reasonably expect that the methods available for gaining access to his records would remain frozen in amber, unaffected by new technologies.[8] Given the public policy in favor of access to public records, we affirm.

---

[7]The Web page copy attached to Mack's complaint as an exhibit is not the Web site's home page but is instead a page labeled "Member Records Online." At the bottom of the page are headings where the Web site user may "click" on to either the "Main Menu" or perform a "Member Search." We infer from this that Mack's name and disciplinary history did not simply appear on the Web site's home page. Rather, a request for information about him was necessary. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339] [in reviewing demurrer, we accept as true not only those facts pleaded, but facts which may be inferred from those expressly alleged].) Further, Mack admitted during oral argument that a specific request was needed in order to obtain information about a particular member from the State Bar's Web site. (*Franklin v. Appel* (1992) 8 Cal.App.4th 875, 893, fn. 11 [10 Cal.Rptr.2d 759].)

[8]We note that the state has committed itself to the use of new technologies to increase public access to public records. In creating the Department of Information Technology in 1999, the Legislature declared information technology to be an "indispensable tool of modern government" and committed itself to taking advantage of the improving technology. (Gov. Code, § 11700.) The director of that department is required to develop plans which include public access to public records by way of new telecommunications technologies. (Gov. Code, § 11713, subd. (d).) Under the CPRA, state agencies are free to exceed that act's minimum standards and adopt requirements that "allow for faster, more efficient, or greater access to records . . . ." (*Gov. Code, § 6253, subd. (e).*)

Although the CPRA and the information technology act are not directly applicable to the State Bar (Gov. Code, §§ 6252, subd. (a), 11780) the state's judicial system—which oversees

## DISPOSITION

For the reasons set forth above, the order dismissing Mack's complaint is affirmed. Respondent to recover its costs on appeal.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied October 25, 2001, and appellant's petition for review by the Supreme Court was denied January 3, 2002.

---

the State Bar—has adopted similar provisions regarding new information technology. The Judicial Council has established a Court Technology Advisory Committee, which "shall make recommendations to the council for improving the administration of justice through the use of technology . . . ." (Cal. Rules of Court, rule 6.53(a).) Trial courts are encouraged to adopt "improved technologies" which can "save the public time, money, and effort and encourage the courts to be efficient in their operations." (Cal. Stds. Jud. Admin., § 38(a).)