[No. B167912. Second Dist., Div. Seven. Oct. 23, 2003.]

KB HOME et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CONSOLIDATED INDUSTRIES CORP. et al., Real Parties in Interest.

## COUNSEL

Lorber, Greenfield, Polito & Pengilly, Joyia Z. Greenfield, Gillian L. Gregory; Newmeyer & Dillion, Gregory L. Dillion and Reed N. Archambault for Petitioners.

No appearance by Respondent.

Mitchell Silberberg & Knupp, Jeffrey L. Richardson, Seth E. Pierce, Diana L. Abdulian and Evan R. Goldstein for Real Party in Interest Daniel L. Freeland, U.S. Bankruptcy Trustee for Consolidated Industries Corp.

Lewis Brisbois Bisgaard & Smith, Charles L. Harris, Melissa A. Miles; Austin & Cannon and Thomas S. Squillaro for Real Party in Interest Canyon Air Systems, Inc.

Sedgwick, Detert, Moran & Arnold, Steven D. Di Saia and Jeffrey L. Horwith for Real Party in Interest Maytag Corporation.

## OPINION

**PERLUSS, P. J.**—The economic loss rule bars recovery in tort for economic damages caused by a defective product unless those losses are accompanied by some form of personal injury or damage to property other than the defective product itself. "[T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property *other than the product itself.* The law of contractual warranty governs damage to the product itself. [Citations.]" (*Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 483 [127 Cal.Rptr.2d 614, 58 P.3d 450] (*Jimenez*).)

KB Home[1] filed this petition for writ of mandate directing respondent superior court to vacate its orders, based on the economic loss rule, precluding KB Home from pursuing negligence and strict products liability theories to recover from real party in interest Consolidated Industries Corp. (Consolidated) the cost of repairing and replacing defective furnaces manufactured by Consolidated and installed in houses built by KB Home. The challenged order was premised on the trial court's conclusion, made as a matter of law without first permitting KB Home or Consolidated to present evidence, that the furnace itself is a single, integrated product and that physical damage caused by the furnace's allegedly defective emissions control device (a "NOx rod") to different components of the furnace did not constitute damage to "other property" within the meaning of the economic loss rule.

■ Determining the nature of the product at issue and whether the injury for which recovery is sought is to the product itself or to property other than the defective product, at least in cases involving component-to-component damage, is generally the province of the trier of fact. (See *Jiminez, supra,* 29

---

[1] Petitioners KB Home; Kaufman & Broad of Northern California, Inc.; Kaufman & Broad of Southern California, Inc.; Kaufman & Broad Land Company; Kaufman & Broad of San Diego, Inc.; Lewis Homes of California and Lewis Development Company are referred to collectively as KB Home.

Cal.4th at pp. 483–485.)[2] Because the trial court's ruling thus deprived KB Home of its right to have material issues of fact submitted to a jury, we grant the petition and direct respondent court to vacate its orders holding that the economic loss rule bars KB Home from recovering tort damages for the cost of repairing and replacing the defective Consolidated furnaces.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Between 1983 and 1994 KB Home installed approximately 2,200 gas-fired horizontal forced air furnaces manufactured by Consolidated in homes it built in California. To meet California requirements limiting nitrous oxides emitted by residential furnaces in certain metropolitan areas, Consolidated installed stainless steel NOx rods above the burners in furnaces to be used in areas subject to these air quality standards.[4]

Neither the NOx rods nor the clips used to secure them in place over the furnace burner were manufactured by Consolidated. KB Home characterizes the NOx rod as "an after-market, add-on emission control device" that is a separate component from the heat exchanger, fire boxes and burners in the Consolidated furnaces and notes that Consolidated sold the furnaces identical to those at issue in this case outside California without the NOx rod.

According to KB Home's expert, the NOx rods were defective and generated excess heat that damaged other parts of the Consolidated furnaces, including melting and cracking burners, cracking heat exchangers and heat exchanger expansion joints and causing fire box failures.[5] The United States Consumer Product Safety Commission (CPSC) issued a safety alert in September

---

[2] Summary judgment, of course, may be proper if "the uncontradicted facts established through discovery are susceptible of only one legitimate inference . . . ." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923].)

[3] Because the trial court decided whether KB Home's costs of replacing Consolidated's allegedly defective furnaces were recoverable under strict liability or negligence theories as a "purely legal issue," we assume for purposes of this appeal the truth of the allegations made by KB Home with respect to the operative facts underlying those tort claims. (See *Aas v. Superior Court* (2000) 24 Cal.4th 627, 634 [101 Cal.Rptr.2d 718, 12 P.3d 1125] [motion to preclude damage evidence under economic loss rule is functional equivalent of a motion for judgment on the pleadings if not decided in light of evidence produced during discovery]; *Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672 [128 Cal.Rptr.2d 358] [motion for judgment on the pleadings in favor of defendant is equivalent to demurrer and is governed by same standard of review; all properly pleaded, material facts are deemed true]; *Mack v. State Bar* (2001) 92 Cal.App.4th 957, 961 [112 Cal.Rptr.2d 341] [same].) It will, of course, remain KB Home's burden to prove those facts at trial.

[4] When clipped over a furnace burner, the NOx rod disburses the burner's gas flame and absorbs heat, lowering the temperature of the flame and thereby reducing the amount of nitrous oxide produced by the flame.

[5] In his declaration submitted in support of KB Home's motion for reconsideration in the trial court, the expert explained: "In practice, the NOx rods absorb the heat of the flame and

2000, warning that the Consolidated NOx rod furnaces "present a substantial risk of fire." On July 9, 2001, the CPSC issued a recall of approximately 30,000 furnaces manufactured by Consolidated and sold in California.

As the safety risk posed by the Consolidated furnaces became known and because Consolidated itself was in bankruptcy and not responding to the problem, KB Home initiated a program to identify and inspect homes it had sold with Consolidated furnaces. In 80 percent of the homes KB Home inspected, the furnaces had bent or melted NOx rods, cracked fire boxes, cracked heat exchanger, melted burners, separations at the control joints and rusted components. Defective or damaged furnaces were replaced by KB Home at a cost in excess of $3 million.

On May 9, 200,1 KB Home sued Consolidated and other defendants, alleging 11 causes of action arising from KB Home's replacement of the defective furnaces, including tort claims for negligence and strict liability. On December 9, 2002, respondent superior court issued an "order regarding threshold legal issues," requiring the parties to submit briefs addressing whether the cost to replace an allegedly defective furnace is recoverable under tort theories of strict products liability or negligence or is barred by the economic loss rule. The order stated the court's decision "will be made as a matter of law, and will not be a decision as to disputed facts."

Pursuant to the schedule announced by the trial court, Consolidated filed a motion regarding the economic loss rule and opening brief on January 10, 2003.[6] KB Home filed an opposition memorandum; Consolidated filed a reply brief. Following this briefing and after hearing oral argument, on April 18, 2003 the court issued a minute order and statement of decision concluding that the furnaces themselves, which the court assumed were defective, are not other property for purposes of the economic loss rule and KB Home's costs for replacing the furnaces, including the costs incurred for the installation and removal of defective furnaces, are not recoverable in tort: "The Court finds the Economic Loss Rule precludes Plaintiffs from recovering tort

---

then emit that heat on to surrounding components of the [furnaces], causing the overall heat generated to increase 200–400 degrees Fahrenheit above normal operating temperatures. These higher temperatures result in thermal damage and consumption of the separate burners, which then produce irregular flames. This higher temperature also cracks the separate heat exchangers located above the flame in the [furnaces]. When the [furnace] blowers become operational, the cracks in the heat exchangers cause the flames to be misdirected, typically down or out the side of the [furnace]. This exposes the structure supporting the [furnace] to extreme temperatures, causing scorching, charring and ultimately ignition of the wooden floor upon which the [furnace] is mounted, thereby resulting in a fire."

[6] Real parties in interest Canyon Air Systems, Inc., and Maytag Corporation filed joinders in Consolidated's motion in the trial court and have similarly joined Consolidated's position before this court.

damages for replacement of the defective [furnaces] absent damage to other property directly caused by the defective [furnaces]." Pursuant to Code of Civil Procedure section 166.1, the court found its ruling involved "a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation. "

KB Home filed a motion for clarification or, in the alternative, reconsideration on April 30, 2003, and also moved for a hearing pursuant to Evidence Code section 402 on disputed factual issues not resolved in the court's statement of decision and order. With its papers KB Home provided an offer of proof, based on declarations from a retained expert and a senior KB Home executive, which it argued establishes that the damages it seeks are recoverable under the economic loss rule as component-to-component damages. The trial court denied both motions, but issued a further order specifying that it considered the furnaces "a single manufactured product and did not consider the component parts of that integrated product as separate products." Any damage to the furnaces' heat exchangers or burners caused by the NOx rods, in the court's view, was damage to the product itself, not damage to "other property" properly recoverable under the economic loss rule.

KB Home filed a petition for writ of mandate directing the trial court to vacate its orders holding that the economic loss rule bars it from recovering damages for the cost of replacing the defective Consolidated furnaces on theories of strict liability and negligence. On July 8, 2003, this court issued an order to show cause why the relief requested by KB Home should not be granted. Having given the parties the opportunity to fully brief the issue, we address the merits of the petition.

## CONTENTIONS

KB Home contends the trial court erred in ruling as a matter of law that physical damage caused by the allegedly defective NOx rod emission device to different components of the Consolidated furnace did not constitute damage to "other property" within the meaning of the economic loss rule and that, at least on the facts of this case, the trial court also erred in failing to recognize a life-safety defect exception to the economic loss rule.

## DISCUSSION

### 1. *Standard of Review*

Relying on the Supreme Court's decision in *Aas v. Superior Court* (2000) 24 Cal.4th 627 [101 Cal.Rptr.2d 718, 12 P.3d 1125] (*Aas*), KB Home

describes the trial court's ruling regarding the economic loss rule as the functional equivalent of a common law motion for judgment on the pleadings or a nonsuit and, as such, subject to de novo review. "While a ruling excluding evidence is not ordinarily subject to review by writ [citation] and typically is reviewed for abuse of discretion on appeal [citation], a motion to exclude all evidence on a particular claim is subject to independent review as the functional equivalent of a common law motion for judgment on the pleadings [citations], or, if decided in light of evidence produced during discovery, a motion for nonsuit [citation]." (*Id.* at pp. 634–635.)

Consolidated, in contrast, argues that the trial court's order is limited to only one category of KB Home's alleged damages (the cost of replacement of the defective furnaces in homes where there was no property damage to other parts of the structure) and does not exclude all evidence on KB Home's tort claims—that is, the trial court's ruling does not preclude KB Home from asserting its strict products liability and negligence claims with respect to homes that actually suffered damage to "other property" within the meaning of the economic loss rule. Accordingly, Consolidated insists that the trial court's ruling, in effect, granted only a motion in limine to one category of damage evidence and, therefore, is properly subject to more limited appellate review for abuse of discretion. (See, e.g., *People v. Alvarez* (1996) 14 Cal.4th 155, 203 [58 Cal.Rptr.2d 385, 926 P.2d 365] ["[A]n appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion."].)

The parties' disagreement as to the most appropriate functional label for the trial court's order is ultimately without significance. The court itself indicated its ruling, made "as a matter of law," raised "a controlling question of law as to which there are substantial grounds for difference of opinion" requiring appellate resolution pursuant to Code of Civil Procedure section 166.1. We, of course, address questions of law under an independent review standard. (*People v. Jones* (2001) 25 Cal.4th 98, 103 [104 Cal.Rptr.2d 753, 18 P.3d 674]; *Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 718–719 [112 Cal.Rptr.2d 195].) Moreover, even when a decision by the trial court is generally reviewed for abuse of discretion, we must determine at the outset whether the court applied the correct legal standard to the issue in exercising its discretion, which determination is also a question of law for this court. "Of course, '[t]he scope of discretion always resides in the particular law being applied; action that transgresses the confines of the applicable principles of law is outside the scope of discretion . . . .' [Citations.]" (*People v. Parmar* (2001) 86 Cal.App.4th 781, 793 [104 Cal.Rptr.2d 31].)

2. *The Trial Court Erred in Ruling as a Matter of Law that KB Home Could Not Recover in Tort for the Cost of Replacing the Defective Furnaces*

■ Under the economic loss rule a manufacturer or distributor may be liable in strict liability or negligence for physical injury to property caused by a defective product, but not for purely economic losses. (E.g., *Seely v. White Motor Co.* (1965) 63 Cal.2d 9 [45 Cal.Rptr. 17, 403 P.2d 145] (*Seely*); *Cronin v. J. B. E. Olson Corp.* (1972) 8 Cal.3d 121, 130 [104 Cal.Rptr. 433, 501 P.2d 1153].) "Economic loss" or harm in this context has been defined as " ' " 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits . . . .' " ' [Citation.]" (*Jimenez, supra,* 29 Cal.4th at p. 482.)

In its landmark decision in *Seely*, the California Supreme Court held a commercial trucker who had purchased a defective truck for use in his heavy-duty-hauling business could recover the purchase price and his lost profits on a breach of express warranty cause of action but could not pursue a strict products liability claim: "[A manufacturer] can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone. [Citations.]" (*Seely, supra,* 63 Cal.2d at p. 18.)

The *Seely* Court, however, agreed with the plaintiff's contention that "the doctrine of strict liability in tort should be extended to govern physical injury to plaintiff's property, as well as personal injury. . . . Physical injury to property is so akin to personal injury that there is no reason to distinguish them. [Citations.]" (*Seely, supra,* 63 Cal.2d at p. 19.) Nonetheless, on the record before it the court declined to permit recovery on a strict liability theory for damages to the plaintiff's truck because "the trial court found that there was no proof that the defect caused the physical damage to the truck." (*Ibid.*)

Prior to the Supreme Court's decision last year in *Jimenez, supra,* 29 Cal.4th 473, the predominant view in California was that tort recovery was available even when the sole physical injury caused by a defect is to the

product itself. For example, in *Sacramento Regional Transit Dist. v. Grumman Flxible* (1984) 158 Cal.App.3d 289, 294 [204 Cal.Rptr. 736], the court rejected any products liability recovery because the plaintiff had "failed to allege physical injury to its property apart from the manifestation of the defect itself . . . ." The court explained, "The rule imposing strict liability in tort for damage to property presupposes (1) a defect and (2) *further* damage to plaintiff's property caused by the defect. When the defect and the damage are one and the same, the defect may not be considered to have caused physical injury. [Citation.]" (*Ibid.*) Division Two of this court applied this understanding of the economic loss rule to permit tort recovery for physical injury to the defective product itself in *International Knights of Wine, Inc. v. Ball Corp.* (1980) 110 Cal.App.3d 1001, 1005 [168 Cal.Rptr. 301], which held that the purchaser of bottled wine was entitled to seek tort damages for the loss of wine caused by corrosion of the metal caps sealing the bottles. Similarly, in *Gherna v. Ford Motor Co.* (1966) 246 Cal.App.2d 639, 649–650 [55 Cal.Rptr. 94], the court recognized the plaintiff's right to recover in tort for fire damage to an automobile caused either by defective wiring or the defective placement of the transmission dipstick. (Accord, *Stearman v. Centex Homes* (2000) 78 Cal.App.4th 611, 622 [92 Cal.Rptr.2d 761] ["[c]ourts of this state have fully examined the economic loss rule, drawn the line of demarcation between such loss and physical injury to property, including to the defective product itself, and allowed recovery of strict liability damages in the latter instance"].)[7]

In *Jimenez* the Supreme Court held a manufacturer of windows installed in a mass-produced home during its construction could be strictly liable in tort for injuries to other parts of the structure in which the defective windows were installed. (*Jimenez, supra,* 29 Cal.4th at p. 476.) Nonetheless, in reviewing the application of the economic loss rule to the claims of the homeowners before it, the Court emphasized that "the economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property *other than the product itself*. The law of contractual warranty governs damage to the product itself. [Citations.]" (*Id.* at p. 483.) Tort recovery was permissible against the window manufacturer, the Court explained, because "California decisional law has long recognized that the economic loss rule does not necessarily bar recovery in tort for damage that a defective product (e.g., a window) causes to other portions of a larger product (e.g., a house) into which the former has been incorporated. . . . '[T]he concept of recoverable physical injury or property damage' ha[s] over time 'expanded to include damage to one part of

---

[7] In *Fieldstone Co. v. Briggs Plumbing Products, Inc.* (1997) 54 Cal.App.4th 357, 365–366 [62 Cal.Rptr.2d 701], in contrast, the court held there must be injury to "other property"—that is, to property other than the defective item itself—to impose tort liability. (See also *Carrau v. Marvin Lumber & Cedar Co.* (2001) 93 Cal.App.4th 281, 295 [112 Cal.Rptr.2d 869].)

a product caused by another, defective part.' " (*Id.* at pp. 483–484, quoting *Aas, supra,* 24 Cal.4th at p. 641.)

██ Under the holding of *Jimenez,* to apply the economic loss rule "we must first determine what the product at issue is. Only then do we find out whether the injury is to the product itself (for which recovery is barred by the economic loss rule) or to property other than the defective product (for which plaintiffs may recover in tort)." (*Jimenez, supra,* 29 Cal.4th at p. 483.) The court did not provide any direct guidance as to how that crucial evaluation was to be made, although it suggested an expansive approach to determining that the damage at issue was to "other property" and therefore recoverable in tort. (See *id.* at p. 484 ["We have no occasion here to consider whether defective raw materials should be treated in the same manner as component parts or whether there may be situations in which the economic loss rule would bar recovery for damages that a defective component part causes to other portions of the finished product of which it is a part."].)[8]

KB Home and Consolidated each advance a number of factors that may be relevant to identifying the "product" in this case and determining whether "other property" or only the defective product itself has been damaged. Looking to decisions from other jurisdictions, Consolidated identifies eight factors, which include the following considerations: (1) Does the defective component (here, the NOx rod) perform an integral function in the operation of the larger product (the furnace)? (2) Does the component have any independent use to the consumer, that is some use other than as incorporated into the larger product? (3) How related is the property damage to the inherent nature of the defect in the component? (4) Was the component itself or the larger product placed into the stream of commerce (or, viewed from the buyer's perspective, was the larger integrated product or the component itself the item purchased by the plaintiff)?[9]

---

[8] In a separate concurring opinion, Justice Kennard, who also authored the majority opinion in *Jimenez,* expressed a somewhat narrower view, arguing that a component should be regarded as a separate product for purposes of the economic loss rule only if it has not been so integrated into the overall unit that it has lost its distinct identity. (*Jimenez, supra,* 29 Cal.4th at pp. 485–486 (conc. opn. of Kennard, J.).) This interpretation is in accord with the rule adopted by the United States Supreme Court in cases decided under federal law (*East River S.S. Corp. v. Transamerica Delaval* (1986) 476 U.S. 858 [106 S.Ct. 2295, 90 L.Ed.2d 865]; *Saratoga Fishing Co. v. J.M. Martinac & Co.* (1997) 520 U.S. 875 [117 S.Ct. 1783, 138 L.Ed.2d 76]), as well as the Restatement Third of Torts, "[W]hen a component part of a machine or a system destroys the rest of the machine or system, the characterization process becomes more difficult. When the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself." (Rest.3d Torts, § 21, com. e, pp. 295–296.) None of the other five justices who signed the majority opinion joined Justice Kennard's concurring opinion.

[9] Justice Brown, the only justice who did not join the Court's opinion in *Jimenez,* considered this factor to be controlling in deciding whether the economic loss rule precludes tort recovery.

KB Home, while disputing the relevance of some of the factors urged by Consolidated, argues that the NOx rod should be considered a separate product from the furnace itself and the other furnace components damaged by the defective rods because (1) Consolidated purchased the rods from another manufacturer for the purpose of adding them only to furnaces supplied to areas covered by the more stringent California emissions regulations; (2) Consolidated sold the identical furnaces in other markets without the NOx rods; (3) the rods can be readily removed from the furnaces; and (4) NOx rods have been used in other, non-furnace applications (for example, gas-fired water heaters) and were listed as separate parts in Consolidated's parts catalog.

■ Under the rationale for the economic loss rule originally articulated in *Seely*, as refined by the Supreme Court's analysis in *Jimenez*, we believe distinguishing between "other property" and the defective product itself in a case involving component-to-component damage requires a determination whether the defective part is a sufficiently discrete element of the larger product that it is not reasonable to expect its failure invariably to damage other portions of the finished product. If that is the case, permitting tort recovery when the defective part causes physical injury to other components is consistent with the underlying principle recognizing a manufacturer's liability in tort "by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm." (*Seely, supra,* 63 Cal.2d at p. 18.) If not, it is fair to impose upon the consumer (in this case, KB Home) "the risk that the product will not match his economic expectations unless the manufacturer agrees that it will" (*ibid.*), and thus to limit damages to those recoverable under the law of contractual warranty. (*Jimenez, supra,* 29 Cal.4th at p. 483.)

■ Under that test, each of the factors advanced by Consolidated and KB Home may be properly considered in "determin[ing] what the product at issue is." (*Jimenez, supra,* 29 Cal.4th at p. 483.) Resolution of this issue, however, should be left to the trier of fact. (See *id.* at pp. 483–485.) The trial court's rulings thus deprived KB Home of its right to have material issues of fact submitted to a jury.

3. *There Is No Life-safety Exception to the Economic Loss Rule*

As an additional ground for issuing a writ of mandate directing the superior court to vacate its orders, KB Home urges us to adopt a limited life-safety-defect exception to the economic loss rule, an exception that would

---

"[A] 'product sold' test for determining what constitutes damage to the product and what constitutes damage to other property . . . harmonizes principles underlying both the economic loss rule and strict products liability, preventing the latter from subsuming the former." (*Jimenez, supra,* 29 Cal.4th at p. 493 (conc. & dis. opn. of Brown, J.).)

be applicable only in unusually compelling circumstances such as those KB Home contends are present here. Specifically, KB Home argues that the defective furnaces at issue created an undisputed, active fire hazard, which resulted in a number of homes actually being destroyed (although not the homes at issue in this proceeding) and that, if left unrepaired, there was a substantial risk of significant personal injury to the occupants of the homes. In addition, KB Home emphasizes that the CPSC issued a safety alert and ultimately a recall of the furnaces.

As compelling as KB Home's policy arguments may be, the Supreme Court has unequivocally rejected such a life-safety exception to the economic loss rule: "[W]hether the economic loss rule applies depends on whether property damage has occurred rather than on the possible gravity of damages that have not yet occurred." (*Aas, supra,* 24 Cal.4th at p. 650.) KB Home observes that many of the potential problems with a life-safety or extremely dangerous product exception that concerned the Supreme Court in *Aas* appear not to be implicated by permitting tort recovery in the present case (for example, because KB Home has already replaced the defective furnaces, there would be no need for court supervision to assure that the dangerous defects were actually corrected). While that may be true, the issue remains one that is appropriately addressed by the political branches of our state government. (*Id.* at p. 652 ["In our view, the many considerations of social policy this case implicates, rather than justifying the imposition of liability for construction defects that have not caused harm of the sort traditionally compensable in tort [citation], serve instead to emphasize that certain choices are better left to the Legislature."].)[10]

### DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent court to vacate its orders holding that the economic loss rule bars KB Home from recovering damages for the cost of repairing and replacing the defective Consolidated furnaces on theories of strict liability and negligence and to

---

[10] The court in *Aas* accepted "for the sake of argument" the suggestion in one Court of Appeal decision that a governmental notice of abatement might convert repair or replacement costs into damages recoverable in tort. (*Aas, supra,* 24 Cal.4th at p. 649, discussing *Huang v. Garner* (1984) 157 Cal.App.3d 404 [203 Cal.Rptr. 800].) KB Home relies on this conditional statement regarding involuntary recalls to argue that its replacement of defective furnaces in response to the CSPC safety alert should similarly be considered damages recoverable in tort. Unlike the notices of abatement at issue in *Huang,* however, neither the safety alerts nor subsequent red-tag activity by the local gas company compelled KB Home to replace the furnaces. Accordingly, even if we, like the Supreme Court, were to accept for the sake of argument that the economic loss rule does not bar tort recovery for the costs incurred in the involuntary replacement of a defective product, this exception would not benefit KB Home in the case at bar.

enter a new and different order permitting KB Home to proceed with those claims. KB Home is to recover costs in this writ proceeding.

Woods, J., and Muñoz (Aurelio), J.,[*] concurred.

A petition for a rehearing was denied November 19, 2003, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied Fedruary 18, 2004.

---

[*]Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.